THE W. J. McCALDIN.[1]

BISCHOFF et al. v. THE W. J. McCALDIN.

BUNKER v. THE W. J. McCALDIN.

(District Court, S. D. New York. April 28, 1888.)

1. COLLISION—TUG—VESSEL AT ANCHOR.
    The steam-tug M. had the government vessel J. in tow, bound up the North river for Thirty-Fourth street. Off Twenty-Sixth or Twenty-Seventh street lay the schooner G. and the ship H., the latter being some 500 feet nearer the Jersey shore than the G., and about 800 feet further up river. At about 7 o'clock P. M. the weather was reasonably clear, and the tide strong flood. The tug, which had come up river on a line to the eastward of the G., when near the latter attempted to go to the westward, and between her and the H. The government vessel struck, first, the G., and then the H., doing damage to both, for which these suits were brought. The tug claimed that the collision was due to the failure of the J. to follow the tug properly, or heed the latter's orders as to her wheel. Held, that though the government vessel (which could not be libeled) appeared to have been in fault for negligent lookout, her fault did not excuse the tug (which had probably miscalculated the strength of the tide) for not having seasonably shaped her course, when further down the river, so as to pass straight between the H. and the G.; that the second collision was the result of the first, and that the tug was liable for both.

2. SAME—ANCHOR WATCH AND LIGHT.
    A vessel in the North river, two-thirds of the way across from the New York shore, is not required to maintain an anchor watch in addition to an anchor light.

In Admiralty.

Wing, Shoudy & Putnam, for libelant Bischoff.

A. J. Heath, for libelant Bunker.

Butler, Stillman & Hubbard, for claimants.

BROWN, J. On the 10th of September, 1887, at about 7 P. M., the government vessel Jamestown was in tow of the steam-tug W. J. Mc-Caldin, upon a hawser about 30 fathoms long. While proceeding up the North river to her intended place of anchorage, off Thirty-Fourth street, she came into collision, first, with the small schooner Glenullen, and soon after with the German ship Hudson; both of which were lying at anchor off Twenty-Sixth or Twenty-Seventh street, and were injured by the collision. These libels were filed by their owners to recover their respective damages. There is considerable difference in the testimony as to the precise place of the Glenullen in the river,—whether she was half or two-thirds of the way across from the New York shore. I judge from the testimony that she was considerably over on the Jersey side of the river. I do not regard this, however, as a very material circumstance. The tide was strong flood. The Hudson was lying from 800 to 1,200 feet further up the river, and, as I find, some 500 or 600 feet

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

nearer to the Jersey shore, than the Glenullen, and at least 1,000 feet distant from the Jersey shore. Nearly ahead of the Hudson, and about abreast of the Glenullen, to the westward, was another vessel, the Victoria, also lying at anchor. On the easterly side of the Glenullen, and about abreast of her, lay a steam-yacht, at a considerable distance; sufficient, at least, to afford easy passage for tugs and tows to pass between her and the Glenullen. Shortly before this collision, the government vessel Portsmouth, in tow of another tug on a hawser, had passed up between the Glenullen and the steam-yacht. The McCaldin, with the Jamestown, was following about half a mile astern of the Portsmouth. The McCaldin's captain testified that, her destined anchorage being to the westward of the Portsmouth's, he took the westerly passage to go between the Glenullen and the Hudson, because that would be more convenient in rounding to, instead of following the Portsmouth on the easterly side of the Glenullen; that, as he approached the Glenullen, the Jamestown did not keep astern of him as she should have kept, but was too much to the right; that he hailed her to starboard her helm, and tooted his whistle several times, but that his signals were not heeded in time; and that it was for that reason only that the Jamestown struck the Glenullen on her port bow, and with her yards carried away the Glenullen's masts; and that afterwards, when he hailed the Jamestown to port her helm, in order to avoid the Hudson, she also failed to obey that signal in time, and, through her own fault, ran bow on against the Hudson.

Though the Jamestown, being a government vessel, could not be brought into these proceedings except on consent of the government, which, it is said, was refused, several of her officers have been examined as witnesses. They testify, in general, that they exactly followed the tug until they received the signal to starboard, when the helm was at once put hard a-starboard accordingly; but that the vessel was so much larger than the tug that, though she minded her own helm quickly, she could not be handled so rapidly as the tug; and that the signal was not given her in time to avoid the Glenullen; and that her officers did not see the latter or the Hudson until close aboard of them. The only reason given for not seeing them sooner was that the night was somewhat foggy, rainy, or misty; but the great weight of evidence is that before this collision the weather had cleared up, and was not sufficiently thick to prevent seeing the lights of vessels half a mile off. The evidence leaves no doubt in my mind that there was abundant room for the McCaldin, with her tow, to have passed on the west side of the Glenullen without the slightest difficulty or danger, had her course been seasonably shaped to pass between them when she was at the proper distance below. The lights of the two vessels were seen by the pilot of the McCaldin when he was off Tenth street, or three-quarters of a mile below the Glenullen. He was then, he says, about in mid-river. He says the Glenullen's light was then a little on his starboard bow. I have no doubt that he is mistaken as to her light being on his starboard bow when he was so far below. If it had been, there would have been no collision. I am satisfied, upon all the testimony, that he was at that time to the eastward of the line of

the Glenullen; and that, though he may have ported a little, enough perhaps to bring the Glenullen slightly on his starboard bow, he did not shape his course with sufficient decision to go west of the Glenullen, considering the strong flood-tide, until he had approached pretty near to her. The fact of the collision itself, the testimony of the other pilot, who was a passenger on the tug, and the fact that the Jamestown exposed her green light only to the master of the Glenullen, bearing nearly straight ahead, shortly before the collisior, show that, even when only one or two lengths off, she was crossing the bows of the Glenullen. These circumstances cannot be explained consistently with the testimony of the tug, nor on any other hypothesis than that there was much delay by the McCaldin in getting into line with the western passage. That delay was not prudent or justifiable navigation on the part of the McCaldin, if it had been previously designed to go to the westward of the Glenullen. The testimony of the master of the Glenullen is entitled to great weight, because the moment when he came on deck, and saw the positions of the tug and the Jamestown, leaves no room for confusion or question as to the time when the positions were such as he testifies to. He says that the tug was about 60 feet distant abeam of him, and the Jamestown one or two lengths below and ahead of him, crossing by about two points. This accords with the other testimony The tug's estimate that she passed 200 feet off the Glenullen cannot be correct, because the hawser was only that length; and the tug had certainly not turned straight across the river. The inference is unavoidable that the tug was coming up to the eastward of the line of the Glenullen, and that, when pretty near the latter, she turned to the westward to cross her bows and go through the west passage. No new circumstances arose that required the McCaldin to go to the westward of the Glenullen, instead of keeping to the eastward, in the line of her previous course. She should either have kept on following the Portsmouth, as she might have done, since her anchorage ground was a half mile above the place of the collision, or else have shaped her course to go to the westward of the Glenullen at a proper distance below her, so as to avoid the danger of the Jamestown's being swept against her by the strong flood-tide. The evidence shows that, whatever delay there may have been by the Jamestown in following the tug, it was but small. The orders to starboard were clearly given when the tug was already very near the Glenullen. There were several such orders, and the last was when the tug was abreast of the Glenullen, and was heard by the master of the latter when he came on deck. The accident was, I am satisfied, due to the fact that the tug, going slow, had miscalculated either the distance of the Glenullen to the westward, or the strength of the flood-tide; and that in crossing to the westward she did not make the necessary allowance for the tide. Upon the testimony, as it stands, were the Jamestown a party defendant, I should find her also liable for contributory negligence for not keeping a watchful lookout. It is not alleged that the tug hid the Glenullen's light. But the Jamestown's faults are not of such a character as to excuse the McCaldin in not seasonably shaping her course to go to the west.

The second collision was plainly the result of the first, which was naturally followed by more or less of excitement and confusion. The first hails given to the Jamestown were to starboard her wheel; but after she struck the Glenullen she was hailed to put her wheel hard a-port, and the quartermaster testifies that this was done, though there is doubt how soon that order was given, and whether the first order to port was not misunderstood; but under the swing to port from the first starboard wheel the Jamestown did not recover in time to avoid the Hudson. When she struck the latter, the Jamestown's wheel was not quite hard a-port. The time from the one collision to the other was probably not over one and a half or two minutes. This furnishes another indication that no proper lookout was kept by the Jamestown, and that the latter did not see the Hudson's lights till close aboard of her. Although it is possible that the second collision might have been avoided by careful observation and judgment, and by very quick handling of the Jamestown immediately after the first collision with the Glenullen, it is nevertheless impossible, considering the excitement and confusion naturally consequent on the first collision, to acquit the McCaldin of blame in having brought the Jamestown into that situation; and the McCaldin must therefore be held liable for the second collision as well as for the first, though the Jamestown would have been also held jointly liable were she a party. I do not find it necessary to determine the controverted question whether the tug did or did not cast off the Jamestown's hawser before she hit the Hudson, instead of continuing up to the last moment to try to pull her to starboard, as was, doubtless, her duty. In the broad and ample channel of the North river, I do not think a vessel nearly or quite two-thirds of the way across from the New York shore is under any obligation to maintain an anchor watch, in addition to an anchor light. There is no reasonable necessity for it, and it is not customary, so far as I can learn. *The Erastus Corning,* 25 Fed. Rep. 572.

Decrees for the libelants in each case, with costs, with orders of reference to compute the damages not agreed on.